No. 25-2936

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

*In re* KRISTI NOEM, *in her official capacity as Secretary, U.S. Department of Homeland Security,* et al.,

Petitioners.

---

On Petition for a Writ of Mandamus to the United States
District Court for the Northern District of Illinois
Case No. 1:25-cv-12173

---

# RESPONSE TO PETITION FOR WRIT OF MANDAMUS AND EMERGENCY MOTION FOR A STAY PENDING A RULING ON THE GOVERNMENT'S PETITION FOR A WRIT OF MANDAMUS AND AN IMMEDIATE ADMINISTRATIVE STAY

---

Steve Art
Justin Hill
Aaron Tucek
Alexandra Wolfson
LOEVY + LOEVY
311 N. Aberdeen Street
Chicago, Illinois 60647
(312) 243-5900
steve@loevy.com

David B. Owens
LOEVY + LOEVY
c/o Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Isaac Green
LOEVY + LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302

Wallace Hilke
COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC
Bluhm Legal Clinic, Northwestern Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224

Craig B. Futterman
MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, IL 60637
(773) 702-9611

Hirsh Joshi
ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

LEGAL STANDARD.............................................................................................5

ARGUMENT .........................................................................................................5

    I.     Defendants Do Not Have A "Clear and Indisputable" Right to the Writ ....................6

        A.  The Administrative Order Was Well Within the District Court's Discretion .........6

        B.  The District Court Designed the Administrative Order With Defendants' Own Input So That It Would Not Interfere with Law Enforcement ..........................................8

    II.    Defendants Attempt to Circumvent Ordinary Appellate Review ...............................11

    III.   Defendants Cannot Show the Writ Is Appropriate ......................................................12

    IV.   The Stay Should Be Vacated ......................................................................................13

    V.    The Government's Remaining Arguments Lack Merit .................................................15

CONCLUSION....................................................................................................19

**TABLE OF AUTHORITIES**

Cases

*A. A. R. P. v. Trump*, 605 U.S. 91 (2025)..........................................................................18

*ACLU v. Alvarez,* 679 F.3d 583 (7th Cir.2012) ...............................................................15

*Allee v. Medrano*, 416 U.S. 802 (1974)..........................................................................17

*Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953).............................................12

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..................................................................7

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004) ....................................................5

*Citizens for Resp. & Ethics in Washington v. Cheney*, 580 F. Supp. 2d 168 (D.D.C. 2008).........13

*Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165 (7th Cir. 1997) .................................12

*Cnty. of Cook v. Bank of Am. Corp.*, No. 14-cv-2280, 2016 WL 11942754 (N.D. Ill. May 23, 2016)..........................................................................................10

*Doe v. Trump*, No. 25-1169, 2025 WL 2814730 (1st Cir. Oct. 3, 2025)........................19

*Eisenberg v. U.S. Dist. Court for S. D. of Ill.*, 910 F.2d 374 (7th Cir. 1990) .................11

*Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016)...................................................................5

*Hague v. Comm. for Indus. Org.*, 307 U.S. 496 (1939)...................................................17

*Hutto v. Finney*, 437 U.S. 678 (1978)................................................................................6

*In re A & F Enters., Inc. II*, 742 F.3d 763 (7th Cir. 2014)...............................................14

*In re Debs*, 158 U.S. 564 (1895)......................................................................................6, 7

*In re Ford Motor Co., Bridgestone/Firestone N.A. Tire, LLC*, 344 F.3d 648 (7th Cir. 2003) ........5

*In re Petition of Boehringer Ingelheim Pharmaceuticals, Inc., & Boehringer Ingelheim International GmbH, in Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, 745 F.3d 216 (7th Cir. 2014)...........................................................................................15

*Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004).....................17

*Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019), ...............................................16, 17

*Mac Naughton v. Harmelech*, 932 F.3d 558 (7th Cir. 2019) ............................................6

*Mahmoud v. Taylor*, 606 U.S. ___, 145 S. C.t 2332 (2025) ........................................................14

*Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803) ...................................................................9

*Matter of Commodity Futures Trading Commission*, 941 F.3d 869 (7th Cir. 2019) ...............9, 12

*Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) ...........................................12

*Michigan Department of State Police v. Sitz*, 496 U.S. 444 (1990) ...............................................8

*Overton v. City of Austin*, 748 F.2d 941 (5th Cir. 1984)..............................................................12

*Pearle Vision, Inc. v. Room*, 541 F.3d 751 (7th Cir. 2008) ...........................................................6

*Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r of Indiana State Dep't of Health*, 896 F.3d 809 (7th Cir. 2018) .........................................................................................15

*Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir.1978).......................................................14

*Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016) ........................................................7

*Reporters Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720 (7th Cir. 2025) .................19

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......................................................................9

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025)..................................................................................17

*United States v. Henderson,* 915 F.3d 1127 (7th Cir. 2019)...........................................................5

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) ..............................................9

*Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025) ..........................................................19

Other Authorities

Harris Faulkner, Interview with Greg Bovino aired October 29, 2025, timestamp: 4:30,       Fox New Channel, available at: https://www.foxnews.com/video/6384251017112 .....................4

2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed. 2022, June 2025 Update) ..............18

# INTRODUCTION

This Court should deny the government's petition for mandamus and lift the stay entered yesterday because the government satisfies none of the standards justifying the relief that it seeks. Instead, based on a substantial record of Defendants' unlawful actions spanning weeks, the district court entered a TRO, imposing modest restraints to prevent the ongoing unconstitutional uses of force perpetuated by federal agents against Plaintiffs-Respondents, who are journalists, demonstrators, observers, and religious practitioners engaged in constitutionally protected activities throughout the Northern District of Illinois. The government agreed to extend the TRO until November 6, 2025. The TRO is not subject to the government's request for mandamus, and a hearing on Plaintiffs' motion for a preliminary injunction will take place next Wednesday, November 5, 2025.

The petition for mandamus pertains solely to an administrative order that the district court entered this week, requiring Defendant Bovino, who is the commander of Defendants' Operation Midway Blitz currently underway in this region, to appear daily in advance of the preliminary injunction hearing in order to explain whether the district court's TRO is being violated. That order was necessary and appropriate because even after the district court entered the TRO, Defendants-Petitioners appeared to simply ignore it, and they continued to perpetuate acts of extreme violence against putative class members engaged in protected First Amendment activities. Among many other things, Defendant-Petitioners have used tear gas on at least seven different occasions in the past two weeks in residential neighborhoods of Chicago—they have tear gassed kids going to Halloween parties, schools and grocery stores, pregnant women and elected officials, clearly identified journalists, and protestors who have observed or spoken out against their unlawful

actions. Defendant Bovino himself was videotaped throwing tear gas at civilians with no lawful justification, in violation of the TRO.

The district court's administrative appearance requirement does not justify the extraordinary relief that the government seeks. The trial court is not micromanaging the Executive Branch, its administrative order is not the "extraordinarily disruptive requirement" the government contends it is, Motion at 1, and it does not "severely limit" Defendants' ability to address threats of violence. Petition at 2. Instead, concerned with the lack of regard for judicial authority and court orders, the district court has entered a modest and temporary reporting requirement to enforce its TRO, and to investigate whether Defendants are in contempt of its orders. At each stage of the case, the district court has taken great care to ensure that there is no limitation on executive or law enforcement operations or on lawful uses of force. Defendant Bovino himself has stated publicly that the reporting requirement the government now challenges poses no obstacle to his work. Indeed, he said after the district court's order that he "looks forward" to reporting to Judge Ellis.

Requiring an Executive Branch official with command authority of a local operation, who is subject to a lawful court order restricting the misuse of force against constitutionally protected civilians, to report to a federal judge for three days—Friday of this week, and Monday and Tuesday of next week—does not justify immediate and extreme appellate intervention. Instead, the government's request that this Court intervene to micromanage the frequency at which a district court can require reports from a relatively low-ranking government official in ongoing litigation would be a radical extension of this Court's mandamus authority. This Court should deny the petition and motion on an expedited basis, and it should lift the stay, so the case can proceed in the district court in the normal course.

## BACKGROUND

A putative class of protestors, clergy, and journalists in the Northern District of Illinois assert claims for injunctive and declaratory relief in this case, alleging among other things that the Defendants' regular use of unlawful force against them in response to constitutionally protected activities during Operation Midway Blitz violates their First and Fourth Amendment rights. Doc. Nos. 1, 21, 80, 81, 82. Based on a substantial and burgeoning record, and after making extensive findings in proceedings that spanned three days in court, the district court entered the TRO on October 9, 2025. Doc. Nos. 33, 41, 42, 43. The TRO has been extended—at the government's own request—until after a hearing on Plaintiffs' pending motion for a preliminary injunction, which is scheduled for November 5. In addition to agreeing to the extension of the TRO, the government has not appealed the denial of its motion to stay the initial restraining order, and it did not ask to stay the modified temporary restraining order entered by the district court on October 17, 2025. Doc. No. 66.

After the district court entered the TRO, Defendants have continued to use extreme and unconstitutional force against Plaintiffs and others similarly situated, who are all engaged in non-violent protected First Amendment activities. Plaintiffs have compiled a detailed record of Defendants' repeated violations of the TRO, supplementing their complaint and filing numerous notices of TRO violations supported by sworn declarations and evidence. Doc. No. 80 ¶¶ 101-124; Doc. Nos. 57; 89; 90; 94; 140; 118. Defendant Bovino himself is involved in apparent violations of the TRO. See Doc. Nos. 89, 90, 94. For instance, video recording shows Defendant Bovino throwing canisters of tear gas into a crowd. Doc. 75 (Oct. 20 Transcript.) at 5:1-19; Doc. No. 144 (Oct. 28 Transcript) at 45:7-13; Doc. No. 52 (Oct. 16 Transcript) at 26:17-25. The district court has asked for supervisory officials from CBP and ICE to provide testimony about compliance with

the TRO and make additional findings during court proceedings. Doc. No. 75 (Oct. 20 Transcript) at 105:21-22, 106:8-13, 18-20; Doc. No. 45 (Oct. 9 Transcript) at 4:13-17, 12:13-19, 16:4-10, Doc. No. 44 (Oct. 8 Transcript) at 13:4-13, 17:10-13. The district court has reiterated its expectation that Defendants implement her order, rather than issuing findings of contempt. Doc. No. 144 (Oct. 28 Transcript) at 32:20-33:4. In nearly every hearing, the district court has made clear that it does not wish to manage the government's operation or decisions, that it does not wish to restrict the government's actions, and that it does not want to interfere with lawful uses of force. *E.g.* Doc No. 44 (Oct. 8 Transcript) at 72:25; Doc. No. 144 (Oct. 28 Transcript) at 44:23-45:2. As the district court has emphasized, the court is proceeding "methodical[ly]" and will not "jump to conclusions. . . . I know my lane. And I will stay in my lane. But I'm also not afraid to enforce this TRO." Doc. No. 144 at 45:16-19 (Oct. 28 Transcript).

At the hearing on October 28, 2025, in which the district court imposed the reporting requirement at issue in the government's petition, Defendant Bovino testified that neither the TRO nor the district court's additional requirements presented any problem in terms of his compliance. For instance, he testified that he did not have questions about the TRO and would abide by the order and "all the accoutrements that are contained therein." Doc. No. 144 (Oct. 28 Transcript) at 24:14-16; 32:22-33:4. When he raised an issue about the time set for the daily reporting, the district court changed the time to fit his schedule. Doc. No. 144 (Oct. 28 Transcript) at 35:5-24. The day after that hearing, Defendant Bovino said publicly that he "look[ed] forward to meeting with that judge to show her exactly what's happening."[1]

---

[1] Harris Faulkner, Interview with Greg Bovino aired October 29, 2025, timestamp: 4:30, Fox New Channel, available at: https://www.foxnews.com/video/6384251017112 (last accessed Oct. 30, 2025).

## LEGAL STANDARD

A writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). This Court may issue a writ of mandamus and stay ongoing district court proceedings "only if the challenged order is effectively unreviewable at the end of the case, it inflicts irreparable harm, and it so far exceeds the proper bounds of judicial discretion as to be legitimately considered usurpative in character, or in violation of a clear and indisputable legal right, or, at the very least, patently erroneous." *In re Ford Motor Co., Bridgestone/Firestone N.A. Tire, LLC*, 344 F.3d 648, 651 (7th Cir. 2003). "Factual or legal uncertainty means no mandamus." *Fowler v. Butts*, 829 F.3d 788, 793 (7th Cir. 2016). "A court of appeals issues a writ of mandamus only when the applicant has an indubitable right to that prerogative writ or there is no other way to correct a manifest injustice." *Id.*

To obtain a writ of mandamus, the government must satisfy three requirements: "First, the petitioner must establish that he has no other adequate remedy—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must show that his right to the issuance of the writ is clear and indisputable. Third, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Henderson,* 915 F.3d at 1132-33 (internal citations omitted).

## ARGUMENT

Defendants seek extraordinary mandamus relief only to excuse Defendant Bovino from the district court's order that he appear in court for the next three weekdays (including tomorrow), an order designed to ensure that Defendants–including Bovino himself–are complying with the terms of the TRO. But Defendants cannot satisfy any of the mandamus requirements that would justify

intervention into the district court's management of this case. Most obviously, there is no "clear and indisputable" basis for providing Defendant Bovino such relief. Second, Defendants have other adequate remedies, including requesting that the district court modify its orders. Finally, extraordinary mandamus relief is not appropriate under the circumstances given the Defendants' pattern of violating the TRO. This Court should deny the petition and lift the stay.

## I. Defendants Do Not Have A "Clear and Indisputable" Right to the Writ

### A. The Administrative Order Is Well Within the District Court's Discretion

The district court's administrative requirement is well within its power. District courts are vested with ample discretion to ensure compliance with their orders. "[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court." *In re Debs*, 158 U.S. 564, 594 (1895). Should a person's actions result "in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party," and a "federal court has at its disposal an array of means to enforce its orders." *Degen v. United States*, 517 U.S. 820, 827 (1996). This power includes the discretion to set hearings, to order parties to appear before the court, and to craft appropriate remedies to ensure compliance with the law. See, *e.g., Pearle Vision, Inc. v. Room*, 541 F.3d 751, 757 (7th Cir. 2008).

This discretion is at its apex when it comes to ensuring compliance with orders that remedy unlawful activity. *Mac Naughton v. Harmelech*, 932 F.3d 558, 566 (7th Cir. 2019) ( "The whole system would collapse if parties could always disregard orders they disagree with."). As the Supreme Court has emphasized, "federal courts are not reduced to issuing injunctions against" the government "and hoping for compliance." *Hutto v. Finney*, 437 U.S. 678, 690 (1978). *Hutto* shows

that when a court has doubts about whether defendants are complying with an injunctive decree, it is entirely proper to hold hearings and closely monitor the defendants' conduct. *Id.* at 681-85. Lower courts are typically afforded many tools to ensure that parties to the litigation respect their rulings. *Id.* at 690; see also *In re Debs*, 158 U.S. at 594; *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it"). Relatedly, district courts have the "inherent" power to hold parties in contempt, and as a necessary corollary they can conduct the fact-finding necessary to make contempt findings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

The district court is exercising precisely these powers in this case. Plaintiffs presented the district court with six notices in a two-week span providing video, photo, and testimonial evidence that Defendants were continuing to violate the TRO. Doc. Nos. 57, 88, 90, 94, 118, 140. These notices included evidence that Defendant Bovino himself had violated the district court's orders. Doc. Nos. 89, 90, 94. Defendants, meanwhile, did not submit any countervailing evidence. Doc. No. 144 (Oct. 28 Transcript) at 9. The district court ordered Defendant Bovino to testify and explain the circumstances for violations Plaintiffs had identified. Given that Plaintiffs had submitted notices of violations occurring on a near daily basis, the district court ordered Defendant Bovino to appear to testify in order to investigate compliance with the TRO and to determine what additional remedies, if any, are warranted. Doc. No. 144 (Oct. 28 Transcript) at 38:19-23. ("I have the inherent power to enforce my TRO. . . . I have, as I have said all along, serious questions about whether it's being followed. So under my inherent power to enforce the TRO, this is what I'm requiring.")

The district court's order is soundly within its discretion to ensure compliance with its order. Plaintiffs presented ample evidence that Defendants have failed to abide by the terms of the

TRO, using unconstitutional force against Plaintiffs, including by detonating chemical weapons. In light of these blatant violations, the district court's order requiring Defendant Bovino to appear each day for a short period so the court can inquire about ongoing compliance with the court's underlying order is well within the court's authority.

### B. The District Court Designed the Administrative Order With Defendants' Own Input So That It Would Not Interfere with Law Enforcement

The Defendants' principal objection to the district court's order is that it threatens to impede the Executive Branch's execution of federal laws. That argument does not stand up to scrutiny. The district court's order does nothing more than perform the core judicial task of searching for truth and ensuring that the actions of the parties before it conform with the law and its orders.

Regardless, the order in no way impedes the Executive Branch's ability to exercise the law within the constraints of the Constitution. It imposes a modest duty to report on the use of force, given Defendants' documented inability to respect First and Fourth Amendment rights and to limit their use of force to comply with the district court's order. What the order does not do is prevent Defendants from deploying, moving, or directing federal agents in any particular place. Defendants' own citation perfectly encapsulates the situation. They cite *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 454 (1990), for the proposition that courts may not preempt an executive's "decision as to which among reasonable alternative law enforcement techniques should be employed to deal with serious public danger." Motion at 17-18. But the district court's order leaves it to Defendants alone to determine the choice of which "reasonable alternative" techniques they use to confront the situation before them. What the TRO prevents is the exercise of unreasonable, unconstitutional techniques without any accountability.

Defendants' arguments to the contrary are misplaced. Defendants cite *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021), for the proposition that "federal courts 'do not possess a roving commission' to 'exercise general legal oversight of the . . . Executive Branch[].'" Motion at 17. But that quotation appears within a discussion of the importance of a "concrete and particularized injury." *Id*. at 423. It has no relevance to the Defendants' sweeping argument about the exercise of judicial power. It is a fundamental principle of American jurisprudence that the government is one of limited powers, subject to constitutional restrictions. "[I]f those limits do not confine the persons on whom they are imposed," the obligations of the Constitution are rendered meaningless. *Marbury v. Madison*, 5 U.S. 137, 176–77 (1803). Actions of the court to ensure compliance of executive officials with our supreme law is "an essential part of the democratic process." *United States v. United Mine Workers of America*, 330 U.S. 258, 312 (1947).

Furthermore, Defendants overstate the extent to which Defendant Bovino himself deserves deference as a high-ranking member of the Executive Branch and, therefore, the extent to whether their case-in-chief has any relevance to the situation at hand. Defendants repeatedly cite *Matter of Commodity Futures Trading Commission*, 941 F.3d 869, 872 (7th Cir. 2019), to argue that the order is an improper intrusion on the Executive Branch. Motion at 3, 11, 12, 14, 17. But *Matter of Commodity Futures Trading Commission* said that "mandamus is the appropriate remedy when a district court has authorized an inquest into the internal deliberations of the Executive Branch's *senior officials*." *Id.* at 872 (emphasis added). Despite Defendants' contention to the contrary, Motion at 14, Defendant Bovino is not the "senior official" that *Matter of Commodity Futures Trading Commission* had in mind. The *Commodity Futures* Court found that "the Chairman and two Commissioners [of the Commodity Futures Trading Commission]" were "senior officials" because they were "appointed by the President on advice and consent of the Senate." 941 F.3d at

872 (7th Cir. 2019). But Defendant Bovino is not close to a Senate-confirmed official, and Defendants' assertion that he qualifies as a high-ranking official is belied by their admission that he "is often in the field directly supervising law-enforcement personnel conducting immigration-enforcement activity." Petition at 13. Defendants also fail to explain how Defendant Bovino's appearing in court a handful of times will deprive an actual high ranking official of "the assistance of their staff." Petition at 17.

Furthermore, even if Defendant Bovino did count as a "high ranking official," such officials can be hailed into court and asked questions where they are "the ultimate decision maker or at least personally involved in the" conduct challenged by the lawsuit. *Cnty. of Cook v. Bank of Am. Corp.*, No. 14-cv-2280, 2016 WL 11942754, at *3 (N.D. Ill. May 23, 2016) (collecting cases). Because Defendant Bovino is on the ground participating in or supervising repeated violations of the Court's TRO, the district court did not overreach by requiring him to provide short daily updates on his agents' uses of force.

Accusing the district court of "micromanaging" Defendant Bovino's "daily operations" is a misreading of the district court's order and is beside the point. Motion at 17. The order does not impede Defendant Bovino's ability to carry out his duties. In fact, the district court agreed to allow Defendant Bovino to appear at 5:45 pm instead of in the middle of the afternoon specifically so as to accommodate his activities. And in a televised interview Defendant Bovino himself stated that daily meetings with the judge (as well as the TRO) had "no effect on Operation Midway Blitz."[2] In short, there is no reasonable basis to argue that the court is micromanaging Defendant Bovino, let alone the Executive Branch.

---

[2] *Supra* n. 1 at timestamp 6:54.

## II.     Defendants Attempt to Circumvent Ordinary Appellate Review

Defendants also fail to satisfy the first requirement of the standard for issuance of a writ of mandamus because (1) they did not even attempt to satisfy the district court's concerns with a less burdensome reporting procedure and (2) appellate relief here would short circuit normal appellate procedure.

First, if Defendants believed the time constraints of appearing five (now three) times were too demanding for Defendant Bovino, Defendants could have asked the district court for another official to appear in his place (for, say, two out of the five days). But Defendants did not make that request, or any other. Instead, they opted for the extraordinary option of filing a petition for mandamus. Because "alternative avenues of relief" were and continue to be available, the petition should be denied as an improper end-run around the normal appellate process. *Eisenberg v. U.S. Dist. Court for S. D. of Ill.*, 910 F.2d 374, 376 (7th Cir. 1990). Furthermore, the Defendants have already represented that Defendant Bovino's participation in the district court's proceedings is necessary because no one other than Defendant Bovino has full insight into the command of Operation Midway Blitz. Doc No. 52 (Oct. 16 Transcript) at 15:22-24 (Counsel for Defendants: "there are many subcomponents here that are involved, and they only have management oversight over certain personnel, not others."); Doc No. 75 (Oct. 20 Transcript) at 48:5-7 (Deputy Incident Commander Kyle Harvick testifying that Defendant Bovino is "in charge of this operation in Chicago").

Second, the Defendants' petition amounts to an attempt to appeal from the district court's ongoing fact-finding in service of its contempt power and the ongoing proceedings below. The district court entered and continued Plaintiff's motion raising civil contempt, and the court has not yet made any final finding of civil contempt or settled on a remedy. Doc. Nos. 142; 146. And even

if the district court had held Defendant Bovino in contempt for violating the TRO, he could not even have appealed that order because "[a]n adjudication of civil contempt used to enforce a judicial order is not appealable if the underlying order is itself not appealable." *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 167 (7th Cir. 1997). Here, Defendants have absolutely no right to appeal a non-finding of contempt for violating an unappealable TRO. If the Defendants believe that the district court has acted improperly, they can raise any challenge they want in a later appeal. They should not be permitted to engineer an emergency appeal out of a minor inconvenience to a mid-level officer who has evinced a shocking disregard for the authority of the judiciary.

## III. Defendants Cannot Show the Writ Is Appropriate

Finally, Defendants do not face the sort of "irreparable harm" that justifies granting mandamus relief. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995). Defendants' only basis for seeking mandamus—the district court's order for Defendant Bovino to appear before it a handful of times—falls far short of "extraordinary" circumstances that would justify this relief. The Supreme Court has emphasized that the "inconvenience and hardship" that comes with attending court proceedings, even a full trial, does not qualify as irreparable harm. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) (quotation omitted); see also *Overton v. City of Austin*, 748 F.2d 941, 958 (5th Cir. 1984) ("Even were a hearing unnecessary or improper . . . that would not be a sufficient ground for mandamus."). Otherwise, a dissatisfied party would seek mandamus every time they were hailed into court.

Defendants cite *Matter of Commodity Futures Trading Commission* again, but again that case cuts against them. There, this Court said that calling federal officials into court for questioning could be justified if the official could be held in contempt personally. 941 F.3d at 872-74. Unlike the officials in *Matter of Commodity Futures Trading Commission*, Defendant Bovino is a party

to this litigation, and he is potentially personally liable to a contempt finding. In fact, the threat of contempt appears highly plausible in this case—the district court has expressed deep skepticism whether its TRO is being followed. See Doc. No. 144 (Oct. 28 Transcript), at 24:17-32:8.

Furthermore, the district court's order is a sound response to the Defendants' continued failure to abide by the terms of the TRO. Despite the clear instructions in the TRO, the Defendants continually have failed to comply. Plaintiffs filed reems of evidence with the court documenting the use of chemical agents against journalists, community members, and non-violent protesters on multiple occasions throughout the Northern District of Illinois after the entry of the TRO. Doc. Nos. 57, 89, 90, 94, 118, & 140. The sworn declarations and exhibits supporting Plaintiffs notice of violation filings demonstrate that on multiple occasions federal agents, including Defendant Bovino, deployed chemical agents and other potentially lethal crowd control weapons with no warning and absent circumstances justifying their use, contrary to the TRO's command. In this context, the district court's order that Defendant Bovino appear daily to discuss the use of force makes perfect sense. It is in direct response to Defendants' failure to conform to the terms of the TRO. For all of the reasons above, this Court should deny the petition.

## IV.     The Stay Should Be Vacated

Because Defendants' request for the writ of mandamus lacks merit, there is no need for the Court to continue the administrative stay entered yesterday. Even if this Court wishes to consider the government's petition for mandamus at greater length, it should immediately vacate its stay of the district court proceedings.

When a court considers a stay pending petition for a writ of mandamus, it considers the same factors as when it considers a stay pending appeal. *Citizens for Resp. & Ethics in Washington v. Cheney*, 580 F. Supp. 2d 168, 177 (D.D.C. 2008). "The standard for granting a stay pending

appeal mirrors that for granting a preliminary injunction." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014); see also Stay Motion at 1. Courts consider "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *Id.* Defendants cannot meet any part of this standard.

First, for all the reasons explained above, Defendants are unlikely to succeed on the merits. Second, the government faces no irreparable harm. The purported irreparable injury claimed by Defendants—that Defendant Bovino will have to appear a handful of times this week and next— is diminished even further because the number of appearances required by Defendant Bovino would be even fewer times by the time the mandamus petition is decided.

On the other hand, Plaintiffs *do* face irreparable harm. As Plaintiffs' evidence well establishes, Defendants have been flouting the TRO, and in doing so they have been trampling Plaintiffs' constitutional rights. *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2364 (2025) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The district court's order will require Defendants to explain any continued unlawful use of force to ensure compliance with the TRO. The alternative is the ongoing violation of Plaintiffs' constitutional rights, which is irreparable harm. *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm."). As the district court noted, the accountability of reporting on uses of force every day was designed to prevent continuing violations. Doc. No. 144 at 44:14-18 ("I suspect that now knowing where we are and that he understands what I expect, I don't know that we're going to see a whole lot of tear gas being deployed over the next week. Mr. Bovino is going to be here every day at 6:00 to tell me what happened.").

Third, the public interest clearly favors implementation of the district court's order. Plaintiffs brought this case because Defendants are interfering with fundamental rights enshrined in the Constitution. Defendants' continued use of unlawful force against peaceful protesters undermines the right to free speech guaranteed by the First Amendment, the right to be free from excessive force guaranteed by the Fourth Amendment, and the right to free exercise of religion. The order in question seeks to ensure that, as the government enforces its laws, it respects those fundamental rights. Unquestionably "upholding constitutional rights serves an important public interest." *Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r of Indiana State Dep't of Health*, 896 F.3d 809, 833 (7th Cir. 2018); see also *ACLU v. Alvarez,* 679 F.3d 583, 590 (7th Cir. 2012) ("[I]njunctions protecting First Amendment rights are always in the public interest."). Furthermore, by seeking to short circuit this process at the start, the government would disable the district court from even determining whether its order is being followed or contempt was committed and by whom. That would have troubling implications for the court's ability to ensure that the government complies with judicial orders and this Court should reject that call for such an expansive executive branch immunity. This Court should vacate the stay.

## V.    The Government's Remaining Arguments Lack Merit

The government's other arguments lack merit. Defendants repeatedly cite *In re Petition of Boehringer Ingelheim Pharmaceuticals, Inc., & Boehringer Ingelheim International GMBH, in Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, 745 F.3d 216, 219 (7th Cir. 2014) (hereinafter "*Boehringer*"), to argue that the district court exceeded its authority. Petition at 3, 12. The facts and legal issues of *Boehringer* are so far removed from those at hand as to make *Boehringer* useless as a comparator. There, this Court granted a writ of mandamus quashing an order from the district court that required a German company to submit to depositions of its

employees in the United States. *Boehringer*, 745 F.3d at 218. Fundamental to this Court's decision were the particular limitations on judicial power inherent to litigating against foreign parties. *Id.* at 218. Of particular concern was the fact that "foreigners who are not in the United States are beyond the subpoena power of our courts even if their testimony can't be obtained in admissible form otherwise." *Id.* at 219. That prompted the court to worry that the German defendant might "complain[] to the German government, or for that matter the U.S. State Department, that the judge's order is *ultra vires* and infringes German sovereignty. Do we need that?" *Id.* No issues like that are present here. Bovino is an American law enforcement agent, acting on American soil, violating American law. The rationale for the mandamus writ in *Boehringer* is absent here.

Furthermore, the *Boehringer* Court was concerned that the district court was forcing "mere[] research scientists" employed by the defendant German company to fly all the way to New York, essentially "punish[ing them] for the sins of their employer." *Id.* Defendant Bovino is a named Defendant, responsible for overseeing the operation that is the source of the controversy here. See Doc. No. 75 (Oct. 20 Transcript) at 48:5-7 (Deputy Incident Commander Kyle Harvick testifying that Defendant Bovino is "in charge of this operation in Chicago"). He is being made to answer for the actions he oversees.

Defendants' reliance on *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019), for their argument that the district court violated separation of powers principles is equally misplaced. In *Karnoski*, the Ninth Circuit granted a writ of mandamus vacating a discovery order that compelled production of discovery materials that the defendants claimed were subject to presidential communications privilege and deliberative process privilege. See *id.* at 1194-95, 1203. The existence of those privileges were central to the court's analysis but are absent here. Executive privilege concerns "communications *directly involving* and documents *actually viewed* by the

President." *Id.* at 1203 (quoting *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1112 (D.C. Cir. 2004)). Defendants do not (and cannot) argue that Bovino's appearance to discuss use of force reports for agents under his command are subject to this privilege. Deliberative process privilege— whch is "not as robust as the presidential communications privilege," *id.* at 1206—covers documents "comprising part of a process by which governmental decisions and policies are formulated," *id.* at 1196. It has no bearing on a court order requiring Defendant Bovino to discuss whether CBP's use of force complies with the requirements of the law. In short, *Karnoski* does not show in any way that the district court's order "implicate[s] separation-of-powers concerns." Petition at 13.

Finally, the Defendants argue that the district court's order "is unmoored from the underlying claims in this litigation," Petition at 15, because the most recent violations of the TRO that Plaintiffs raised with the district court "have no discernable connection to the named plaintiffs or to their underlying claims," *Id.* at 16 (citing *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025)). For several reasons, Defendants are wrong.

As Plaintiffs' filings explain, each of the apparent violations Plaintiffs raised relate to their claims regarding Defendants' ongoing policy and practice of violating the First and Fourth Amendment of the United States Constitution in their interactions with civilians who are observing, recording, reporting on, praying for, or protesting in the Northern District of Illinois. See Doc. Nos. 57, 88, 90, 94, 118, 140. "Where, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate." *Allee v. Medrano*, 416 U.S. 802, 815 (1974); see also *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 516 (1939) (similar). Additionally, these apparent violations are connected to the underlying claims because the district court issued the TRO in response to Plaintiffs' evidence of this ongoing policy. The district court's order that Defendant

Bovino appear daily is, as explained above, an appropriate and measured response to these many apparent violations.

Nor is there any problem that the Order is not in response to an apparent violation that was perpetrated against one of the named Plaintiffs. Plaintiffs have moved to certify several classes that would include all those harmed by the apparent violations. *See* Doc. No. 81. And just last term, the Supreme Court held even absent a motion for class certification that "courts may issue temporary relief to a putative class" before "decid[ing] whether a class should be certified." *A. A. R. P. v. Trump*, 605 U.S. 91, 98 (2025). That is exactly what the district court did. Indeed, as the Court noted in its Order entering the TRO, "[t]o the extent that Plaintiffs conditionally show that class certification pursuant to Rule 23(b)(2) is appropriate," class-wide relief is appropriate. Doc. No. 43 at 10 n.4; see also 2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed. 2022, June 2025 Update) ("[T]he universal injunction decision's bar is on relief to non-parties; absent class members, even those in a merely putative class, may be considered 'parties' for some purposes, prior to class certification.").

Furthermore, as the district court recognized in entering the TRO, this is the sort of case in which providing complete relief to the named plaintiffs "will necessarily incidentally benefit other protestors, journalists, and religious figures present at protests" because "Defendants likely cannot determine who among protestors is a Plaintiff in this case" and because "Plaintiffs could not be assured that the injunction has any force if Defendants could engage in the crowd control tactics addressed in the injunction with respect to other protestors, journalists, or religious figures present near them, given the fact that these crowd control tactics are designed to have an impact beyond just one individual." Doc. No. 43 at 9-10. This reasoning is entirely consistent with *CASA*, which recognized that sometimes "an injunction requiring the defendant to cease the offending activity

entirely may be the only way to provide complete relief to the plaintiff." *Reporters Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 733 (7th Cir. 2025) (discussing *CASA*); *see also Vasquez Perdomo v. Noem*, 148 F.4th 656, 686 (9th Cir. 2025) ("the TRO enjoining a certain practice of suspicionless stops within the Central District of California is not an impermissible 'universal' injunction like the ones disapproved in *CASA*. One obvious difference is geographical: the injunction here is not national, but limited to one judicial district. But much more importantly, the scope and structure of the TRO is reasonably necessary to provide complete relief to the Plaintiffs and benefits non-plaintiffs only incidentally"); *Doe v. Trump*, No. 25-1169, 2025 WL 2814730, at *34 (1st Cir. Oct. 3, 2025) (Barron, J.) ("Nothing in *CASA* provides that, as a categorical matter, it is improper for a district court to impose an injunction of such breadth if it is necessary to do so to provide the plaintiff with complete relief.").

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny the petition and lift the stay.

RESPECTFULLY SUBMITTED,

**CHICAGO HEADLINE CLUB, et al.**

BY:   /s/Steve Art

|  |  |
|---|---|
| | Wallace Hilke |
| Steve Art | COMMUNITY JUSTICE AND CIVIL |
| Justin Hill | RIGHTS CLINIC |
| Aaron Tucek | Bluhm Legal Clinic, Northwestern |
| Alexandra Wolfson | Pritzker |
| LOEVY + LOEVY | School of Law |
| 311 N. Aberdeen Street | 375 E. Chicago Ave. |
| Chicago, Illinois 60647 | Chicago, IL 60611 |
| (312) 243-5900 | (312) 503-2224 |
| steve@loevy.com | |
| | Craig B. Futterman |
| David B. Owens | MANDEL LEGAL AID CLINIC |

19

LOEVY + LOEVY
c/o Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Isaac Green
LOEVY + LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302

University of Chicago Law School
6020 S. University
Chicago, IL 60637
(773) 702-9611

Hirsh Joshi
ROGER BALDWIN FOUNDATION OF
ACLU, INC.
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32 and Federal Rule of Appellate Procedure 21 because the document contains 6,019 words.

The document complies with the typeface requirements of Fed. R. App. P. 32 and Circuit Rule 32 because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Times New Roman style font.

Dated: October 30, 2025
/s/ Steve Art
*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2025, the foregoing brief was filed with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 30, 2025

/s/Steve Art
*Counsel for Respondent*